IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No.  19-01831-dd |
| | ) | Chapter  7 |
| Jarod Neil Ammerman and | ) | |
| Ashley Rheinheimer Ammerman, | ) | |
| | ) | **NOTICE OF MOTION FOR** |
| Debtors. | ) | **RELIEF FROM AUTOMATIC** |
| | ) | **STAY (11 U.S.C. § 362(A))** |

TO:   DEBTORS, TRUSTEE (if applicable), AND THOSE NAMED IN THE ATTACHED MOTION

PLEASE TAKE NOTICE THAT a hearing will be held on the attached Motion on:
    Date:   May 14, 2019
    Time:   9:00 a.m.
    Place:  King and Queen Building, 145 King Street, Room 225 Charleston, South Carolina 29401

Within fourteen (14) days after service of the attached Motion, the Notice of Motion, the Movant's Certification of Facts, (and a blank certification of facts form, applicable only to motions for relief from the automatic stay and for service on *pro se* parties only), any party objecting to the relief sought shall:

    (1) File with the clerk a written objection to the 11 U.S.C. §362 Motion;

    (2) File with the clerk a Certification of Facts;

    (3) Serve on the Movant items 1 and 2 above at the address shown below; and

    (4) File a certificate of such service with the clerk.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

Date:    4/11/19              /s/Magalie A. Creech
                             Magalie A. Creech
                             District Court ID No. 10871
                             Attorney for Movant
                             FINKEL LAW FIRM LLC
                             Post Office Box 1799
                             Columbia, South Carolina 29202
                             Phone (803) 765-2935
                             Fax (803) 252-0786
                             mcreech@finkellaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 19-01831-dd |
| | ) | Chapter 7 |
| Jarod Neil Ammerman and | ) | |
| Ashley Rheinheimer Ammerman, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MOTION TO MODIFY STAY

MidFirst Bank ("Movant") moves the Court pursuant to 11 U.S.C. Section 362(d)(1) and (2) for modification of the automatic stay issued in this case and represents as follows:

1.    The above-referenced Debtors filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on March 29, 2019.

2.    The Trustee of the Debtors' estate may claim an interest in the property which is the subject of this action.

3.    Movant is the holder of a secured claim against the Debtors evidenced by a note and mortgage, copies of which are attached hereto. The property covered by the mortgage is located at 256 Turkey Oak Drive, Bluffton, Beaufort County, South Carolina 29910 as is more fully described in the attached mortgage.

4.    The Debtors have failed to make a regular mortgage payment for September 2017. Movant has therefore not been provided adequate protection for its interest in the property and is suffering irreparable harm and injury.

5.    The Debtors have no equity in the subject property, and the property is not necessary for reorganization.

6.    Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b). The claimant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs, and expenses, will be paid to the Trustee.

WHEREFORE, pursuant to 11 U.S.C. Section 362(d)(1) and (2), Movant hereby moves for an Order modifying the automatic stay to permit actions in State Court against the subject property and for legal fees and expenses for bringing this action.    Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement,  and to further communicate with the Debtors and Debtors' counsel to the extent necessary to comply with applicable nonbankruptcy law. Upon relief of stay, Movant may contact the Debtors via telephone or written correspondence to offer such an agreement.    Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

BY:    /s/Magalie A. Creech
Magalie A. Creech
District Court ID No. 10871
Attorney for Movant
FINKEL LAW FIRM LLC
Post Office Box 1799
Columbia, South Carolina 29202
Phone (803) 765-2935
Fax (803) 252-0786
mcreech@finkellaw.com

Columbia, South Carolina
    4/11            , 2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )       Case No.  19-01831-dd
                                          )       Chapter  7
Jarod Neil Ammerman and                   )
Ashley Rheinheimer Ammerman,              )
                                          )       **CERTIFICATION OF FACTS**
            Debtors.                      )
                                          )
_____   )

   In the above-entitled proceeding, in which relief is sought by MidFirst Bank ("Movant") from the automatic stay provided by 11 U.S.C. §362, I hereby certify to the best of my knowledge the following:

   1.    <u>Nature of Movant's interest</u>. Movant has a perfected security interest in the below-referenced property.

   2.    <u>Brief Description of Security Agreement, copy attached (if applicable).</u> See copy of note and mortgage attached.

   3.    <u>Description of Property Encumbered by Stay (include serial number, lot and block number, etc.).</u> 256 Turkey Oak Drive, Bluffton, Beaufort County, South Carolina 29910, as more fully described in the attached note and mortgage.

   4.    <u>Basis for Relief (for cause, property not necessary for reorganization, debtor has no equity, property not property of estate, etc) include applicable subsection of 11 U.S.C. §362).</u> 11 U.S.C. §362(d)(1),(2); Cause, lack of adequate protection;  Property not necessary for reorganization, Debtor has no equity.

   5.    <u>Prior Adjudication by Other Courts, copy attached (Decree of Foreclosure, Order for Possession, Levy of Execution, etc., if applicable).</u> N/A

   6.    <u>Valuation of Property, copy of Valuation attached (Appraisal, Blue Book, etc.):</u>

            Fair Market Value              $257,357.00 (per Debtors' Schedules)
            Movant's Lien                  $280,719.81*
            Other Liens:                   $
            (Listed in Order of priority)
            Net Equity                     $(23,362.81)*
            Source/Basis of Value:         Schedules of Debtor(s)

   7.    Amount of Debtor's Estimated Equity (using figures from paragraph 6, supra): $(23,362.81)*

8.    <u>Month and Year in which first direct post-petition payment came due to Movant (if applicable)</u>.    Debtors file a Chapter 7 bankruptcy and have indicated their intention to surrender the property.

9.    <u>(a)</u>    <u>For Movant/Lienholder (if applicable):  List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied</u>.    No post-petition payments have been received.

      (b)    <u>For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made.  Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection</u>.  N/A

10.   <u>Month and year for which post-petition account or debtor(s) is due as of the Date of this Motion.</u>    September 2017 forward.

Date:    04/11/19                        /s/Magalie A. Creech
                                         Magalie A. Creech
                                         District Court ID No. 10871
                                         Attorney for Movant
                                         FINKEL LAW FIRM LLC
                                         Post Office Box 1799
                                         Columbia, South Carolina 29202
                                         Phone (803) 765-2935
                                         Fax (803) 252-0786
                                         mcreech@finkellaw.com

*including continuing interest, legal fees and costs, escrow shortages, and any other fees and costs allowed by the note and mortgage.

# NOTE

MIN: ████████████████

Loan Number: ████████████

FHA Case No: ████████████

MARCH 17, 2017            COLUMBIA            SOUTH CAROLINA
   [Date]                    [City]                      [State]

256 TURKEY OAK DR, BLUFFTON, SOUTH CAROLINA 29910
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 252,695.00        (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is HOMEOWNERS MORTGAGE ENTERPRISES, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       3.875  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st   day of each month beginning on       MAY 1       , 2017      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      APRIL 1, 2047      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2530 DEVINE STREET, COLUMBIA, SOUTH CAROLINA 29205

                                or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,188.27       .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

Mortgage Lender/Servicer: HOMEOWNERS MORTGAGE ENTERPRISES, INC.
NMLS # 154698

MULTISTATE PHA FIXED RATE NOTE
USFHA.NTE 08/14/16                              Page 1 of 4                    DocMagic eForms
                                                www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000    % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                              Page 2 of 4                     DocMagic eForms
                                                                                www.docmagic.com

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                              Page 3 of 4                              DocMagic eForms
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ASHLEY R AMMERMAN              -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower


*[Sign Original Only]*

Loan Originator: Bradley Ellis, NMLSR ID 780331
Loan Originator Organization: Homeowners Mortgage Enterprises, Inc. -
Hilton Head, NMLSR ID 154698

Note Allonge

Loan Number : █████████

Note Date: 3/17/2017

Loan Amt: $252,695.00

Borrower Name: ASHLEY R AMMERMAN

Property Address: 256 TURKEY OAK DR, BLUFFTON, SC 29910

Pay to the order of

**Amerihome Mortgage Company, LLC, A Delaware, LLC**

Without Recourse

**Homeowners Mortgage Enterprises, Inc.**

By:_____

**Colleen Wright, Assistant Vice President, Homeowners Mortgage Enterprises, Inc.,**

**Allonge to Note**

Loan Number per Note:

AmeriHome Loan Number:

Loan Amount:                          $252,695.00

Note Date:                            03/17/2017

Borrower Name(s):                     ASHLEY R AMMERMAN

Property Address:                     256 TURKEY OAK DR, BLUFFTON, SC 29910

Pay to the order of:

## MIDFIRST BANK

Without Recourse

AmeriHome Mortgage Company, LLC, a Delaware Limited Liability Company

Signature:_____

Name of Authorized Signer: Alina Shokina

Title of Authorized Signer: Operations Analyst, Secondary Marketing

BEAUFORT COUNTY SC - ROD
BK 3560 Pgs 1745-1760
FILE NUM 2017014021
03/21/2017 04:25:27 PM
REC'D BY rbins RCPT# 843358
RECORDING FEES $22.00

After Recording Return To:

HOMEOWNERS MORTGAGE ENTERPRISES, INC.
2530 DEVINE STREET
COLUMBIA, SOUTH CAROLINA 29205
Loan Number: 1700072

Wiseman & Reilley, LLC
Attorneys & Counselors at Law
P.O. Box 7605
Hilton Head Island, SC 29938

─────────────── [Space Above This Line For Recording Data] ───────────────

FHA Case No: ▮▮▮▮▮▮

# MORTGAGE

MIN: ▮▮▮▮▮▮▮▮▮                                    MERS Phone: ▮▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated  MARCH 17, 2017                , together with all Riders to this document.
(B) "Borrower" is  ASHLEY R AMMERMAN and JAROD AMMERMAN wife and husband

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is  HOMEOWNERS MORTGAGE ENTERPRISES, INC.

Lender is a                                                                               organized
and existing under the laws of    SOUTH CAROLINA
Lender's address is   2530 DEVINE STREET, COLUMBIA, SOUTH CAROLINA 29205.
tel. (888) 653-9037

(E) "Note" means the promissory note signed by Borrower and dated    MARCH 17, 2017
The Note states that Borrower owes Lender    TWO HUNDRED FIFTY-TWO THOUSAND SIX
HUNDRED NINETY-FIVE AND 00/100             Dollars (U.S. $  252,695.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  APRIL 1, 2047        .

Mortgage Lender/Servicer: HOMEOWNERS MORTGAGE ENTERPRISES, INC.
NMLS # 154698

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                          Page 1 of 13                    DocMagic eForms
                                                                              www.docmagic.com

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☒ Planned Unit Development Rider
☐ Condominium Rider            ☐ Other(s) [specify]


(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|                | COUNTY | of |           | Beaufort |  :
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.
LOT 21 Southern Oaks at New Riverside

**Parcel ID Number:   R614 036 000 1247 0000**

which currently has the address of   256 TURKEY OAK DR

[Street]

BLUFFTON                          , South Carolina        29910              ("Property Address"):

[City]                                              [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                            Page 3 of 13                    DocMagic *eForms*
www.docmagic.com

until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA,

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                             Page 4 of 13                       DocMagic *eForms*
                                                                                    www.docmagic.com

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                                    Page 5 of 13                          DocMagic *eForms*
                                                                                              www.docmagic.com

or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                          Page 6 of 13                          DocMagic eForms
www.docmagic.com

attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                          Page 7 of 13                          DocMagic eForms
                                                                                    www.docmagic.com

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                                Page 8 of 13                                DocMagic eForms
                                                                                                www.docmagic.com

that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                              Page 9 of 13                              DocMagic *eForms*
www.docmagic.com

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security**

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                                              Page 10 of 13                                              DocMagic *eForms*
www.docmagic.com

Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Homestead Waiver. Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law.

25. Waiver of Appraisal Rights. The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in §12-37-250 of the South Carolina Code of Laws.

26. Future Advances. The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                         Page 11 of 13                         DocMagic eForms
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ASHLEY R AMMERMAN          -Borrower

_____ (Seal)
JAROD AMMERMAN             -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Witness

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTG22.FHA 08/04/16          Page 12 of 13          DocMagic eForms
www.docmagic.com

--------------------  [Space Below This Line For Acknowledgment]  --------------------

State of SOUTH CAROLINA

County of Beaufort

The foregoing instrument was acknowledged before me this _____ March 17, 2017
                                                                          (date)

by ASHLEY R. AMMERMAN AND JAROD AMMERMAN

_____

_____

                                    (names of person acknowledging)

_____

Signature of Person Taking Acknowledgment

        Notary
Title or Rank    8-27-2017

_____

Serial Number, if any

State of SOUTH CAROLINA

Beaufort _____ County

   I certify that __ Betty Parks _____
                              (name of subscribing witness)

personally appeared before me this day and certified to me under oath or by affirmation that he or she is not a grantee
or beneficiary of the transaction, signed the foregoing document as a subscribing witness, and either [X] witnessed
   Ashley R. Ammerman and Jarod Ammerman _____ sign the foregoing document
                    (name of principal)

or ☐ witnessed _____
                                       (name of principal)

acknowledge his or her signature on the already-signed document.

Date: 3-17-17 _____        _____
                                       (Signature of Notary)

                                         Jeffrey G. Reilley
                                       (Notary's Printed or Typed Name)

                                       _____

                                       Notary Public for South Carolina
                                       My Commission Expires: 8·27·2017

Loan Originator: Bradley Ellis, NMLSR ID 780331
Loan Originator Organization: Homeowners Mortgage Enterprises, Inc. - Hilton Head, NMLSR ID 154698

SOUTH CAROLINA FHA MORTGAGE - MERS
SCMTGZ2.FHA  08/04/16                        Page 13 of 13                      DocMagic eForms
                                                                                www.docmagic.com

# PLANNED UNIT DEVELOPMENT RIDER

Loan Number:

> FHA Case No.

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          17th          day of
MARCH, 2017                        , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to   HOMEOWNERS
MORTGAGE ENTERPRISES, INC.
"Lender" of the same date and covering the Property described in the Security Instrument and located at:

256 TURKEY OAK DR, BLUFFTON, SOUTH CAROLINA 29910
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as:

Southern Oaks
[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.    So long as the Owners Association (or equivalent entity holding title to common areas and facilities),
acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master"
or "blanket" policy insuring the property located in the PUD, including all improvements now existing
or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides
insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including
fire and other hazards included within the term "extended coverage," and loss by flood, to the extent
required by the Secretary, then:

(i)   Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment
to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and

(ii)  Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of
any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of
restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the
sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

Mortgage Lender/Servicer: HOMEOWNERS MORTGAGE ENTERPRISES,
INC. NMLS # 154698

MULTISTATE PUD RIDER
USFHAP.RDR 09/01/14                         Page 1 of 2                         DocMagic EForms
                                                                               www.docmagic.com

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
ASHLEY R AMMERMAN                -Borrower

_____ (Seal)
JAROD AMMERMAN                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

MULTISTATE PUD RIDER
USFHAP.RDR  09/01/14.

Page 2 of 2

DocMagic *eForms*
www.docmagic.com

EXHIBIT A

ALL, that certain piece, parcel or lot of land, situate, lying and being in Southern Oaks Phase 4A, Beaufort
County, South Carolina, and shown and described as Lot 21 Southern Oaks Phase 4A on that certain plat
entitled "A SUBDIVISION PLAT OF LOTS 1-28 SOUTHERN OAKS PHASE 4A" prepared by Atlas Surveying
Inc., William H. Gray, S.C.P.L.S No. 22744, dated August 26, 2016, and recorded on August 26, 2016 in the
Office of the Register of Deeds for Beaufort County, South Carolina in Plat Book 144 at Page 184. For a more
detailed description as to location, metes, bounds, distances, direction, etc., reference may be had to said plat
of record.

This is the same property conveyed to the within Mortgagors by deed of Village Park Homes, LLC, recorded in
the ROD Office for Beaufort County, South Carolina in Book _____ 3560 ___ at Page _____ 1742 ____ .

BEAUFORT COUNTY SC - ROD
BK 3716 Pg 2367
FILE NUM 2018062816
11/21/2018  02:18:30 PM
RCPT# 912816
RECORDING FEES 6.00

**SOUTH CAROLINA**
COUNTY OF BEAUFORT
LOAN NO.: ▮▮▮▮▮▮▮

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

# ASSIGNMENT OF REAL ESTATE MORTGAGE

FOR VALUE RECEIVED, AMERIHOME MORTGAGE COMPANY, LLC, located at 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, Assignor, without recourse does hereby transfer, assign, and set over unto MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, located at 999 NW GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118, Assignee, its successors and assigns, forever, that certain Mortgage dated MARCH 17, 2017 and executed by ASHLEY R AMMERMAN AND JAROD AMMERMAN WIFE AND HUSBAND, Mortgagor(s), to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR HOMEOWNERS MORTGAGE ENTERPRISES, INC., ITS SUCCESSORS AND ASSIGNS, Original Mortgagee, recorded on MARCH 21, 2017 in Mortgage Book 3560 at Page 1745 in the Office of the Clerk or Recorder of Deeds in and for the County of BEAUFORT, State of SOUTH CAROLINA.

AS DESCRIBED IN SAID MORTGAGE

TOGETHER WITH all Assignor's right, title, and interest, accrued or to accrue under said Mortgage.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on NOVEMBER 21, 2018.
AMERIHOME MORTGAGE COMPANY, LLC

KAYLA SCHROEDER, LIMITED VICE PRESIDENT

_____
ADDISON RICE, Witness

_____
SHIRLEY LEDVINA, Witness

STATE OF IDAHO            COUNTY OF BONNEVILLE    ) ss.

On NOVEMBER 21, 2018, before me, RAE DUTTON, personally appeared KAYLA SCHROEDER known to me to be the LIMITED VICE PRESIDENT of AMERIHOME MORTGAGE COMPANY, LLC the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
RAE DUTTON (COMMISSION EXP. 07/21/2022)
NOTARY PUBLIC

RAE DUTTON
Notary Public - State of Idaho
Commission Number 66101
My Commission Expires Jul 21, 2022

Page 1 of 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No.  19-01831-dd |
| | ) | Chapter  7 |
| Jarod Neil Ammerman and | ) | |
| Ashley Rheinheimer Ammerman, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2019, I served a copy of the Notice of Motion, Motion to Modify Stay, Certification of Facts, and a Certificate of Service on the below-listed parties, by depositing same in the United States Mail with sufficient first-class postage affixed and addressed as indicated below:

Jarod Neil Ammerman
Ashley Rheinheimer Ammerman
256 Turkey Oak Drive
Bluffton, SC   29910

Paul W. Owen Jr., Esq.
Upright Law
PO Box 369
Orangeburg, SC  29116

Kevin Campbell, Trustee (via ECF)
PO Box 684
Mount Pleasant, SC   29465

Kim B. Johnson, Paralegal to
Magalie A. Creech
District Court ID No. 10871
FINKEL LAW FIRM LLC
Post Office Box 1799
Columbia, South Carolina 29202
Phone (803) 765-2935
Fax (803) 252-0786
mcreech@finkellaw.com